OPINION
{¶ 1} This is an appeal from the Licking County Court of Common Pleas, Domestic Division, Case No. 98DR00230.
 {¶ 2} The four Assignments of Error are:
 ASSIGNMENTS OF ERROR I. {¶ 3} "THE TRIAL COURT ERRED BY AWARDING ATTORNEY FEES TO THE PLAINTIFF."
 II. {¶ 4} "THE COURT ERRED BY AWARDING SPOUSAL SUPPORT TO THE PLAINTIFF."
 III. {¶ 5} "THE COURT ERRED BY DETERMINING THAT THE MARRIAGE DID NOT END UNTIL THE FIRST DAY OF THE FINAL HEARING."
 IV. {¶ 6} "THE COURT ERRED BY FAILING TO DISTRIBUTE THE MARITAL ASSETS EQUALLY, BY DIVIDING CERTAIN ASSETS WITHOUT ASCERTAINING THE VALUE OF THOSE ASSETS, BY ORDERING DIVISION OF CERTAIN SEPARATE PROPERTY, AND BY FAILING TO MAKE APPROPRIATE FINDINGS JUSTIFYING ITS DIVISION OF ASSETS."
 STATEMENT OF THE FACTS AND CASE {¶ 7} The parties to this cause were married on May 15, 1982. At such time appellant was a licensed funeral director and appellee was a licensed beautician. Appellant's employer at the time of the marriage was Rutherford Funeral Home. Such employment as well as the employment of appellee continued until 1988.
 {¶ 8} In 1988 appellant and one Thomas Sims acquired a funeral home in Newark, Ohio for about $1.2 million dollars, which was financed.
 {¶ 9} Lee Mitchell Kirkpatrick was born to the parties on Dec. 22, 1989. After the birth of such child, appellee did not continue to maintain full time employment but retained her license.
 {¶ 10} Abby Lynn Kirkpatrick was born to the parties on November 14, 1992.
 {¶ 11} Appellant entered into an Agreement with Thomas Sims in 1991 and became sole owner of the Newark funeral home.
 {¶ 12} Appellee inherited $117,000.00 from her father's estate in 1995, $60,000.00 of which remained at the time of the divorce hearing in 1999.
 {¶ 13} In late 1996 appellant began treatment for psychological problems.
 {¶ 14} Appellant entered into a series of stock purchase agreements as to the funeral home with one Jon Wagner beginning in 1997.
 {¶ 15} Appellee filed for divorce on February 21, 1998, subsequent to an agreed division of household furnishings.
 {¶ 16} The psychological condition of appellant worsened over the pendency of the divorce and he became unable to continue working at the funeral home. A manager, Michael Rodriquez was hired but this arrangement subsequently proved unsatisfactory.
 {¶ 17} The final divorce hearing was held on May 24-25, 1999.
 {¶ 18} While the division of business assets was deferred, the issues as to custody, support and other marital assets were presented to the trial court.
 {¶ 19} Certain stipulations as to the children and asset valuation were agreed.
 {¶ 20} An exception as to agreed value was the Country Club membership.
 {¶ 21} The magistrate issued the following findings:
 {¶ 22} "(1) that the period of the marriage encompass[ed] the period beginning May 15, 1982, and ending on the first day of trial, May 24, 1999,
 {¶ 23} "(2) that it would not be realistic or inappropriate for the plaintiff to seek full-time work,
 {¶ 24} "(3) that the plaintiff's earnings, together with her custodial duties and responsibilities make it improbable that she will be able to support herself and the children in the standard of living to which they are accustomed without a reasonable amount of financial assistance pending the sale of the funeral business,
 {¶ 25} "(5) the plaintiff has been actively involved and contributed materially to the operation of the [funeral home] business,
 {¶ 26} "(6) the defendant had "engaged in a pattern of financial misconduct . . . when he hired his friend Michael Rodriquez [to work at the funeral home],
 {¶ 27} "(7) that "[t]he defendant's mental and physical health are generally poor . . . [and t]he evidence did not establish an approximate date when the defendant may resume gainful employment",
 {¶ 28} "(8) that the defendant owned a Rutherford Funeral Homes, Inc. profit-sharing plan worth $46,796.97,
 {¶ 29} "(9) the magistrate imputed income to both parties, in the amounts of $10,712 per year for the plaintiff, and $126,722 per year for the appellant,
 {¶ 30} "(10) the magistrate awarded the marital residence free and clear to the appellee as a distributive award and "in recogni[tion of] the financial misconduct of the defendant,
 {¶ 31} "(11) the magistrate ordered the defendant's Rutherford Funeral Homes profit-sharing plan to be divided into equal shares,
 {¶ 32} "(12) the magistrate further ordered the defendant to pay spousal support to the plaintiff in the amount of $2,000 per month and awarded the defendant's social membership in Moundbuilders Country Club to the plaintiff,
 {¶ 33} "(13) the magistrate ordered that the defendant pay $7,500 of the plaintiff's attorney fees."
 {¶ 34} Objections to the magistrate's decision were filed by both parties.
 {¶ 35} Prior to the trial court ruling on the objections, the funeral home was sold. Of the approximate $1.4 million proceeds, Jon Wagner received 32.7586% due to the prior purchase agreements. The trial court ordered the remainder divided equally, being about $450,000.00 each. Also, appellant and appellee were, as part of the sale, to receive $100,000.00 each as a non-compete benefit from the purchaser.
 {¶ 36} On March 7, 2001 the trial court modified the magistrate's decisions with regard to respective imputed incomes, increased the attorney fees to appellee to $22,200.00 and modified the property division.
 I. {¶ 37} An award of attorney's fees in a domestic proceeding lies within the sound discretion of the trial court. Rand v. Rand (1985),18 Ohio St.3d 356, 359. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 38} A review of a trial court's division of marital property is also governed by an abuse of discretion standard. Martin v. Martin
(1985), 18 Ohio St.3d 292. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, Myers v. Garson (1993), 66 Ohio St.3d 610.
 {¶ 39} The trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222.
 {¶ 40} In considering totality of the circumstances we must determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 41} Directing our attention to the first Assignment of Error relative to the award of attorney fees to appellee and reviewing such under the abuse of discretion standard as stated heretofore, we must disagree with this Assignment.
 {¶ 42} The magistrate in paragraph 47 stated that appellee would have been prevented from fully litigating her rights and adequately protecting her interests without incurring these expenses.
 {¶ 43} The magistrate found that the incurred fees as of the hearing date were $17,679.28 with anticipated additional fees of $3,000.00 to $4,500.00, (T. at p. 36-37), but only awarded partial fees of $7500.00 without a rationale as to partial fees after the factual determination at paragraph 47 as stated above.
 {¶ 44} The trial court reviewed the magistrate's decisions, the transcript and objections and prior opinions and, as to fees, increased the magistrate's recommendation to $22,200.00, which is supported by the evidence. (Appellee had objected to the magistrate's award as being insufficient and this objection was sustained.)
 {¶ 45} However, in the final entry the attorney fees were listed at $22,500.00 without explanation.
 {¶ 46} We find that appellant's assertions that the trial court failed to base the fees upon any factors of DR 2-106(B) to be lacking in merit. While the trial court did not specifically reference any of these factors, it had examined the transcript of evidence and the findings and conclusions of the magistrate in arriving at the fee conclusion which was supported by the evidence no objection as to the reasonableness of such charges was made.
 {¶ 47} Appellant concludes that because the trial court ordered appellees attorney fees to be paid out of his equity in the home, that it procedurally committed error. The conclusion is an unwarranted assumption as the trial court merely selected an offset method relative to the fee obligation. No forfeiture occurred nor were the fees a portion of the property division. No abuse of discretion in this regard occurred even though the trial Judge increased the amount $300.00.
 {¶ 48} Appellant's first Assignment of Error is overruled.
 II. {¶ 49} The second Assignment of Error asserts error in the spousal support award.
 {¶ 50} Spousal Support is governed by R.C. § 3105.18:
 {¶ 51} "§ 3105.18 Award of spousal support; modification.
 {¶ 52} "(A) As used in this section, "spousal support" means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. "Spousal support" does not include any payment made to a spouse or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under section 3105.171 [3105.17.1] of the Revised Code.
 {¶ 53} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 [ 3105.17.1] of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.
 {¶ 54} "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.
 {¶ 55} "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.
 {¶ 56} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 57} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 58} "(b) The relative earning abilities of the parties;
 {¶ 59} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 60} "(d) The retirement benefits of the parties;
 {¶ 61} "(e) The duration of the marriage;
 {¶ 62} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 63} "(g) The standard of living of the parties established during the marriage;
 {¶ 64} "(h) The relative extent of education of the parties;
 {¶ 65} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 66} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 67} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 68} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 69} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 70} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 71} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
 {¶ 72} "(D) In an action brought solely for an order for legal separation under section 3105.17 of the Revised Code, any continuing order for periodic payments of money entered pursuant to this section is subject to further order of the court upon changed circumstances of either party.
 {¶ 73} "(E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after May 2, 1986, and before January 1, 1991, or if a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 {¶ 74} "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
 {¶ 75} "(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
 {¶ 76} "(F) For purposes of divisions (D) and (E) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses.
 {¶ 77} "(G) If any person required to pay alimony under an order made or modified by a court on or after December 1, 1986, and before January 1, 1991, or any person required to pay spousal support under an order made or modified by a court on or after January 1, 1991, is found in contempt of court for failure to make alimony or spousal support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.
 {¶ 78} "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 79} This was a seventeen year marriage with a high standard of living applicable.
 {¶ 80} The trial court awarded spousal support of $1,200.00 per month for 36 months, subject to termination on death, remarriage or cohabitation prior to the expiration of such three year period.
 {¶ 81} The evidence presented to the trial court as to the income, imputed income, assets and questionable financial practices of appellant was very complex but reviewed in exacting detail.
 {¶ 82} We find that competent, credible evidence supports the trial court's determination of spousal support. We cannot find an abuse of discretion, that a lack of evidence supports the award nor can we substitute our opinions for those reached by the trial Judge under the facts presented. Myers v. Garson (1993), 66 Ohio St.3d 610.
 {¶ 83} We, therefore, reject the second Assignment of Error.
 III., IV. {¶ 84} The third Assignment of Error objects to the marriage termination date determination.
 {¶ 85} The fourth Assignment of Error is addressed to the property division.
 {¶ 86} Both the third and fourth Assignments of Error are subject to R.C. 3105.171 which provides:
 {¶ 87} "3105.171 DIVISION OF MARITAL PROPERTY; SEPARATE PROPERTY
 {¶ 88} "(A) As used in this section:
 {¶ 89} "(1) "Distributive award" means any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code.
 {¶ 90} "(2) "During the marriage" means whichever of the following is applicable:
 {¶ 91} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 {¶ 92} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
 {¶ 93} "(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
 {¶ 94} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 95} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 96} "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
 {¶ 97} "(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 148.06 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage.
 {¶ 98} "(b) "Marital property" does not include any separate property.
 {¶ 99} "(4) "Passive income" means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse.
 {¶ 100} "(5) "Personal property" includes both tangible and intangible personal property.
 {¶ 101} "(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 102} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 {¶ 103} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 104} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
 {¶ 105} "(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;
 {¶ 106} "(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
 {¶ 107} "(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
 {¶ 108} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
 {¶ 109} "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
 {¶ 110} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 {¶ 111} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 {¶ 112} "(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.
 {¶ 113} "(3) The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded.
 {¶ 114} "(4) If the marital property includes a participant account, as defined in section 148.01 of the Revised Code, the court shall not order the division or disbursement of the moneys and income described in division (A)(3)(a)(iv) of this section to occur in a manner that is inconsistent with the law, rules, or plan governing the deferred compensation program involved or prior to the time that the spouse in whose name the participant account is maintained commences receipt of the moneys and income credited to the account in accordance with that law, rules, and plan.
 {¶ 115} "(D) Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse.
 {¶ 116} "(E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.
 {¶ 117} "(2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.
 {¶ 118} "(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.
 {¶ 119} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 120} "(1) The duration of the marriage;
 {¶ 121} "(2) The assets and liabilities of the spouses;
 {¶ 122} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 123} "(4) The liquidity of the property to be distributed;
 {¶ 124} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 125} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 126} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 127} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 128} "(9) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 129} "(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage.
 {¶ 130} "(H) Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property.
 {¶ 131} "(I) A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court.
 {¶ 132} "(J) The court may issue any orders under this section that it determines equitable, including, but not limited to, either of the following types of orders:
 {¶ 133} "(1) An order granting a spouse the right to use the marital dwelling or any other marital property or separate property for any reasonable period of time;
 {¶ 134} "(2) An order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court."
 {¶ 135} The magistrate determined the marriage to have terminated on the first day of trial of May 24, 1999 and that such finding was equitable. This was accepted by the trial Judge in reviewing the evidence. Such evidence indicated a joint vacation in 1998 after separation in 1997 and continued tax filings as husband and wife. This testimony along with the financial testimony is sufficient to warrant the equitable finding of the marriage ending date. No abuse of discretion occurred. The third Assignment of Error is denied.
 {¶ 136} In regard to the fourth Assignment of Error, there are two aspects to consider, first, it is apparent and agreed that a mathematical error occurred in the division of marital assets and second, did the trial court state the reasons sufficiently as to the unequal division of such assets.
 {¶ 137} Since the judgment entry of December 31, 2001, merely states the division without setting forth the reasons upon which it is based, we must look to that portion of the magistrate's decisions adopted by the trial court and to the trial court's opinions of March 7, 2001, March 8, 2001 and judgment entries of March 15, 2001, March 27, 2001, August 24, 2001 and November 20, 2001 for guidance.
 {¶ 138} As set forth in R.C. § 3105.171(G) the trial court shall make written findings of fact that support the equitable division of the property.
 {¶ 139} Also, the trial court under this subsection must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93.
 {¶ 140} While we find no abuse of discretion relative to the unequal division of the property, we do, in some particulars, find an insufficient explanation of the division to enable this Court to follow the reasoning of the trial court.
 {¶ 141} The trial court had sustained the appellant's objections as to the household goods value application between the parties and then, in the final decision allocated $16,025.00 to appellee and $3,900.00 to appellant without explanation.
 {¶ 142} Also, while the trial court had the total stipulated value of the Rutherford Profit Sharing Plan and referenced the fact that a portion was a non-marital asset (presumably because it commenced prior to the marriage) the explanation is not sufficiently clear to enable this Court to follow the monetary explanation. While a clarification may not alter the end result, it is necessary under the statute and underKaechele v. Kaechele, supra.
 {¶ 143} We believe that the appellant's concern over the lack of value and explanation of the Moundbuilder's Country Club social membership to be without merit. (This was paid by the Corporation prior to these proceedings.)
 {¶ 144} The membership was admittedly used primarily by appellee and the children. In approving the transfer to appellee, the trial court removed the obligation of membership payment from appellant. Obviously, the membership is predicated on the payment of dues and incurred obligations of usage.
 {¶ 145} The value is transitory in that it has value only to the extent payment is made.
 {¶ 146} We therefore sustain this fourth Assignment of Error only to the extent that clarification of the trial court's rationale is needed as to the matters set forth herein and correction of the mathematical error is required.
 {¶ 147} This cause is remanded for such clarification and correction and is partially reversed for such purposes.
By: Boggins, J., Gwin, P.J. and Edwards, J. concur.
Topic: Attorney fees, spousal support, division of assets.